UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:23-cv-24073-CMA

HH ADVERTISING, INC.,

    Plaintiff,

vs.

UNIQUE VACATIONS, INC.,
UNIQUE TRAVEL CORPORATION,
and SANDALS RESORTS
INTERNATIONAL, LTD.,

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF AMENDED ORDER GRANTING DEFENDANT SANDALS RESORTS INTERNATIONAL, LTD.'S RENEWED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

    Plaintiff, HH ADVERTISING, INC. ("**Plaintiff**"), by and through its undersigned counsel and pursuant to Rule 59(e), Fed. R. Civ. P., hereby files its Motion for Reconsideration of the Court's Amended Order Granting Defendant, SANDALS RESORTS INTERNATIONAL, LTD.'s ("**Sandals**"), Renewed Motion to Dismiss Plaintiff's [Amended] Complaint [ECF No. 158], and states as follows:

**INTRODUCTION**

    Plaintiff respectfully requests reconsideration of the Court's Amended Order to correct clear error or prevent manifest injustice. Specifically, the Court's Order did not address personal jurisdiction over Sandals with respect to Plaintiff's copyright infringement claim as alleged in Count II of Plaintiff's Amended Complaint. Construing all reasonable inferences in the light most favorable to Plaintiff when dealing with conflicting evidence, Plaintiff's claim of copyright infringement establishes personal jurisdiction over Sandals.

1

CASE NO. 1:23-cv-24073-CMA

## PROCEDURAL HISTORY

On March 27, 2024, Sandals filed its Renewed Motion to Dismiss Plaintiff's [Amended] Complaint for Lack of Personal Jurisdiction [ECF No. 124] ("**Motion to Dismiss**"). On April 10, 2024, Plaintiff filed its Memorandum of Law in Opposition to Sandals' Motion to Dismiss [ECF No. 133] ("**Response**"). On April 17, 2024, Sandals filed its Reply Memorandum in Support of the Motion to Dismiss, improperly adding the declaration of Andrew Blanco, contrary to the requirements of S.D. FLA. 7.1(c), which prevented any response by Plaintiff [ECF No. 142] ("**Reply**"). On April 25, 2024, Plaintiff filed its Motion for Leave to File Sur-Reply to Sandals' Reply [ECF No. 152] ("**Motion for Sur-Reply**"). On April 29, 2024, the Court entered its Order granting the Motion to Dismiss and denying the Motion for Sur-Reply [ECF No. 154] ("**Original Order**"). On May 4, 2024, Sandals filed its Motion to Correct or Clarify Footnote [ECF No. 156] requesting that the Court amend the Original Order to "correct the Court's statement that SRI 2000 was the parent company of UVI." On May 6, 2024, without providing Plaintiff with an opportunity to respond, the Court granted Sandals' request to amend the Original Order and entered the Amended Order ("**Amended Order**") [ECF No. 158].

## LEGAL STANDARD

"While the Federal Rules of Civil Procedure do not expressly provide for a motion for reconsideration, such a motion can be raised under various rules, depending on the nature of the underlying order." *Rivera v. Rodomar, Inc.*, 18-22450-CIV, 2019 WL 2125017, at *1 (S.D. Fla. Jan. 23, 2019). Specifically, Rule 54(b) provides, in pertinent part, that an interlocutory order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. Notably, a motion for reconsideration under Rule 54(b) requires a more flexible standard than Rule 59(e). *McClendon v. United States*, 892

2

F.3d 775, 781 (5th Cir. 2018) (finding that a district court commits reversible error by applying the more stringent Rule 59(e) standard in denying a motion to reconsider an interlocutory order, when the motion is brought under the more flexible Rule 54(b)).

The decision to grant a motion for reconsideration is within the discretion of the district court. *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health and Rehab. Servs.*, 225 F.3d 1208, 1218 (11th Cir. 2000). A court abuses its discretion, however, when it misapplies the law. *Id*. The courts have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Rivera*, 2019 WL 2125017, at *1; *Strike 3 Holdings, LLC v. Doe*; 2024 WL 728110 (S.D. Fla. February 22, 2024) (granting motion for reconsideration upon finding of clear error). "[A] motion for reconsideration is appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Sanchez v. City of Pembroke Pines, Florida*, 16-CV-62958, 2017 WL 5598614, at *1 (S.D. Fla. Nov. 20, 2017) (although movant failed to raise the argument previously, the court granted reconsideration "in order to prevent manifest injustice") (internal citation omitted). Plaintiff's motion for reconsideration is based on the need to correct clear error, to prevent manifest injustice, and because Plaintiff respectfully submits "the Court has patently misunderstood a party . . . or has made an error not of reasoning but of apprehension." *Id.*

## MEMORANDUM OF LAW

The Court did not address personal jurisdiction over Plaintiff's copyright infringement claim against Sandals in its Amended Complaint [ECF No. 121] ¶¶ 64-73. The Amended Order refers to "copyright claims" generally, but does not independently consider personal jurisdiction

as it relates to Plaintiff's claim for copyright infringement (Count II). [ECF No. 158] at 2-3 ("This case arises from copyright claims by an advertising company against several entities… In this regard, Defendant continues to maintain that it has no relationship to nor any interest in the substance of Plaintiff's copyright claims."). This omission is significant because personal jurisdiction relating to the copyright infringement claim requires a different analysis, not addressed in the Court's Order.

### A. The Legal Standard for Personal Jurisdiction for a Copyright Infringement Claim

A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (quoting Fed.R.Civ.P. 4(e)(1), (h), and (k)). The Florida "long-arm" statute permits a court to exercise jurisdiction over nonresident defendants who commit certain specific acts. § 48.193, Fla. Stat. For example, "§ 48.193(b) of the Florida long-arm statute permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello*, 544 F.3d at 1283 (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir.1999)). The Florida district courts and the Eleventh Circuit have provided coexisting authority to determine when an alleged copyright or trademark infringement caused injury in Florida to satisfy Florida's long-arm statute.

Florida district courts have held that the injury giving rise to personal jurisdiction necessarily occurs where the owner of the copyright resides. *E.g.*, *Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 8:12-CV-755-T-26TBM, 2012 WL 2952452, at *5 (M.D. Fla. July 19, 2012) ("The situs of the injury in copyright infringement for purposes of personal jurisdiction, has generally been held to be the state where the copyright owner resides."); *JB Oxford Holdings, Inc.*

*v. Net Trade, Inc.*, 76 F. Supp. 2d 1363, 1366 (S.D. Fla. 1999); *Nida Corp. v. Nida*, 118 F.Supp.2d 1223, 1231 (M.D. Fla. 2000).

The Eleventh Circuit recognizes Florida district court's basis for personal jurisdiction for these claims and raises an additional, independent basis for establishing personal jurisdiction. *Licciardello*, 544 F.3d at 1284. Personal jurisdiction can also be established over a nonresident defendant where "the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida." *Id*. at 1283 ("…we decide the case based upon Lovelady's website contact in Florida."); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) (holding that Florida's long-arm statute permits jurisdiction over nonresident defendant where the allegedly infringing website was accessible in Florida.)

What is more, the Eleventh Circuit ***does not require that the website be owned or operated*** by the nonresident defendant, only that the nonresident defendant ***controlled*** the website, or controlled the company that manages the website, and solicits business through that website. *Louis Vuitton*, 736 F.3d at 1354 (finding personal jurisdiction over nonresident defendant despite his argument that he was not affiliated with the website stating that even "if [defendant] was not the entire moving force behind the website, he surely had the lead role."); *Licciardello*, 544 F.3d at 1283 (finding personal jurisdiction over nonresident defendant despite his argument that he did not commit any tort because he did not actually create the website.) Further, the Eleventh Circuit has held that liability falls on anyone with "a financial interest in the infringing activity and the right to supervise [an individual's infringing] activities…even if they were ignorant of the infringement." *S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985); *see also, Foreign Imported Productions & Pub., Inc. v. Grupo Indus. Hotelero, S.A.*, 07-22066-CIV, 2008 WL 4724495, at *14 (S.D. Fla. Oct. 24, 2008).

B. **The Amended Complaint Sufficiently Pleads Jurisdictional Facts Supporting Personal Jurisdiction over Sandals for Copyright Infringement**

Plaintiff pleads that it is the owner of the copyrights and a Florida resident, which Florida district courts have recognized is the situs of the injury for purposes of establishing personal jurisdiction. *Yellow Pages*, 2012 WL 2952452 at *5; *JB Oxford*, 76 F.Supp.2d at 1366; *Nida Corp.*, 118 F.Supp.2d at 1231; *see also Licciardello*, 544 F.3d at 1284. Plaintiff further alleges that "Sandals, both personally and through its Florida agent, UVI, ***committed tortious acts within this state*** by: ***Sandals' use of Plaintiff's copyright protected works*** including on ***Sandals' and/or its agents' website(s) which are accessible to Florida residents*** to book resorts that are owned, operated, managed and/or controlled by Sandals..." [ECF No. 121] ¶ 27(a). Plaintiff's allegations further satisfy the Eleventh Circuit's coexisting basis for exercising personal jurisdiction in cases where the infringing content on the website is accessible in Florida. *Licciardello*, 544 F.3d at 1283; *Foreign*, 2008 WL 4724495 at *6 ("Because [p]laintiff has alleged that the website is the site of the copyright infringement and is accessible in Florida, on a motion to dismiss, [p]laintiff's allegations are sufficient to invoke § 48.193(1)(b) of the Florida long-arm statute.")

Sandals' Motion to Dismiss briefly addresses Plaintiff's copyright infringement claim but fails to state how Plaintiff's allegations are not sufficient to allege personal jurisdiction. Sandals only argues that Sandals did not commit any copyright infringement because it is not involved in marketing and advertising, does not maintain a website, and is not claiming copyright ownership. [ECF No. 124] at 18. This argument is wholly insufficient to overcome well-established Eleventh Circuit precedent that does not require that Sandals own the website, only that Sandals can control the company that manages the website, and solicits business through that website. *Louis Vuitton*, 736 F.3d at 1354. Indeed, in *Licciardello* and *Louis Vuitton*, the defendants similarly denied that they were affiliated with or created the website that sold the infringing products, and therefore

did not commit any alleged tort. *Louis Vuitton*, 736 F.3d at 1351; *Licciardello*, 544 F.3d at 1283. In *Louis Vuitton*, the Eleventh Circuit found that, even "if [defendant] was not the entire moving force behind the website, he surely had the lead role." *Id*. at 1352. In *Licciardello*, the Eleventh Circuit reversed the district court and found that that the exercise of personal jurisdiction was authorized. *Id*.; *see Foreign Imported Productions & Pub., Inc. v. Grupo Indus. Hotelero, S.A.*, 07-22066-CIV, 2008 WL 4724495, at *6 (S.D. Fla. Oct. 24, 2008)

### C. The Amended Order Does Not Address Specific Personal Jurisdiction over Sandals for Copyright Infringement

The Court notes that "Defendant does not dispute that, if the allegations in the Amended Complaint are true, it would be properly before the Court." [DE 154] at 5. However, respectfully, the Court only makes general references to the long arm statute under Legal Standards, Section II of the Amended Order, and there is no discussion or analysis of Plaintiff's claim of personal jurisdiction under Florida's long-arm statute based on Count II of Plaintiff's Amended Complaint. The Amended Order focuses more broadly on "Defendant's assertions that: SRI 2000 is a related, but separate, entity from Defendant; SRI 2000, and not Defendant, is the one with an interest in this action; Defendant has no connection to this state; and Plaintiff was aware of this before filing its Amended Complaint." [ECF No. 158] at 11. The Court compartmentalizes the evidence supporting Sandals' control over the website and benefits obtained through the website as merely "an argument that Defendant's failure to maintain its corporate form renders it liable for SRI 2000's action." *Id*. at 9. For example, the Court relies on Flores' deposition only in the context of the interconnectedness of the entities, but does not consider it in relation to Sandals' control over the website or to contradict Rainer's declaration regarding control of the website. *Id*. at 8 ("Next, Plaintiff relies on two depositions to show there was some overlap in the management and function

of various Sandals entities…The depositions Plaintiff cites are not 'competent proof' to the contrary" that "Sandals is the relevant entity here.")

D. **Defendants' Conclusory Affidavits are Insufficient to Overcome the Jurisdictional Facts Supporting Personal Jurisdiction over Sandals for Copyright Infringement**

"Where [plaintiff's] complaint and supporting affidavits and documents conflict with the [d]efendants' affidavits, we must construe all reasonable inferences in favor of the plaintiff…" *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Moreover, a defendant's conclusory assertions of ultimate fact are insufficient to shift the burden to plaintiff to produce evidence supporting jurisdiction where defendant's affidavit merely: "explains [the company's] corporate structure and status; summarily asserts that [the company] never has done business in or directed contacts into Florida; admits certain peripheral connections with the state; and denies in a conclusory way any other actions that would bring [the company] within the ambit of the Florida long-arm statute." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1215 (11th Cir. 1999); *Compare* Rainer Decl. ¶ 12 *with Posner*, 178 F.3d at 1225-29 (Appendix A).

Plaintiff's evidence, including the declaration of Plaintiff's owner and principal, Tracey Hunter [ECF No. 133-1], Plaintiff's Media Director, Brian Ludwick [ECF No. 133-2], and the deposition of Valentin Flores, former chief information officer for the Sandals' umbrella of companies that he did work for, directly conflict with Rainer's statements and support Plaintiff's allegations that Sandals had control over, and financially benefitted from the sandals.com website, as follows:

> *Rainer's Decl. ¶ 12:* "SRI Limited does not own or operate the website referred to in Plaintiff's Amended Complaint, www.sandals.com, nor does it have any role in developing or approving content for that website."

Respectfully, as founder of HH Advertising, Tracey Hunter ("**Hunter**") was much more than just an "employee" of Plaintiff, as suggested in the Amended Order [ECF No. 158] at 6-7. Hunter established HH Advertising in 1987 and worked directly with Sandals and its founder, Gordon Stewart ("**Sandals Founder**") beginning in 1992, before SRI 2000 ever existed. [ECF No. 149-1] ¶¶ 2-3[1]. While Rainer claims the title of CEO of both Sandals and SRI 2000, he began his employment in 2018, only five years ago, and has no personal knowledge of the prior 26 year history of Sandals, Gordon Stewart and their relationship with HH Advertising. Plaintiff's business relationship with Sandals since 1992 far exceeds Rainer's five year tenure. Rainer lacks personal knowledge and his less than certain declaration that he "understands[2]" certain information falls short of the personal knowledge which is necessary to rely upon as evidence in this case. *Harrington v. RoundPoint Mortg. Servicing Corp.*, No., 2017 WL 1331072, at *4 (M.D. Fla. Apr. 11, 2017) (finding affiant lacked personal knowledge to testify regarding an agreement and dealings between third parties). Further, Rainer's declaration is rife with halftruths, Rainer Decl. ¶ 16 (deliberately obscuring the entity that Gordon Stewart served, Rainer states that Gordon Stewart was "Chairman of the *Sandals Resorts business*," when he was in Miami "in connection with marketing and advertising,") [when he Chairman of ***Sandals***]; ¶ 19 (stating that "SRI Limited has

---

[1] Adam Stewart did not know when SRI 2000 was formed, and Rainer testified only that SRI 2000 was "redomesticated in 2014", which is 22 years after Plaintiff first began working with Sandals. [ECF No. 149-1] at 84:4-6; Rainer Decl. ¶ 14,
[2] *See*, Rainer Decl. ¶ 12 ("SRI Limited *understands* that this website is owned and operated by an affiliate of co-Defendants Unique Vacations, Inc. ("UVI") and Unique Travel Corporation ("UTC"), through an agreement with SRI Limited's upstream parent company, Sandals Resorts International 2000 Inc. ("SRI 2000")"); ¶ 18 ("SRI Limited *understands* from SRI 2000 that UTC and UVI had worked directly with HH to develop and promote advertising for Sandals, Beaches, Royal Plantation, and Grand Pineapple branded resorts and vacation packages and that UTC paid HH directly for such advertising services."); ¶ 11 (regarding Sandals' counsel's provision of the an agreement to Plaintiff "I understand this Services Agreement was produced during jurisdictional discovery in the above-captioned litigation.").

no record of making any payments to or receiving any payments from HH," even after Plaintiff presented Sandals with evidence of numerous payments from Sandals to HH during Adam Stewart's deposition); ¶ 9 ("SRI Limited … ***does not directly*** [but does indirectly] advertise, market, or sell to the public any vacation property in the United States or Florida through print, radio, television, the internet, or through booking or travel agents. SRI Limited also does not specifically target Florida or any other state with any SRI Limited brand advertising or marketing"); ¶ 10 ("SRI Limited does not earn any revenue ***directly*** [but does indirectly] off any individuals or entities in the United States or Florida.".

Given the extensive 30-year exclusive business relationship between HH and Sandals and its founder, Ms. Hunter's testimony has an appropriate foundation, which should not be disregarded or relegated as inferior to Rainer, who has worked for the Sandals entities for approximately five years. At the very least, where evidence conflicts, Plaintiff should be given every reasonable inference. *Stubbs*, 447 F.3d at 1360; *Madara*, 916 F.2d at 1514.

Adam Stewart acknowledges that Sandals was formed in the late 1980s, and he has worked for Sandals Resorts International Ltd. since he graduated from college in 2003. [ECF No. 149-1] at 26:8-14, 28:22, 29:17 and reported to his father after he took on the role of CEO of Sandals, a position that he held until 2018. *Id*. at 20:19-21 [ECF 124-1 at 73]("Before Mr. Rainer became CEO in March 2018, [Adam] Stewart served as Sandals' CEO and received a salary for that role."). As CEO of Sandals, Adam Stewart admits participating in collaborative meetings with Plaintiff. *Id*. at 46:4-8. Adam Stewart never had an SRI 2000 email **until 2021**. *Id*. 25:14-15. No basis exists to relegate Hunter as uninformed regarding Sandals' corporate structure and accept, Defendant's self-serving testimony that every email sent by Adam Stewart to Plaintiff using his sri.sandals email and including his title as CEO of Sandals Resorts International, as anything other than what

is represented on each email [ECF No. 149-1] ¶¶ 13. That is, Adam Stewart communicated with Plaintiff on behalf of Sandals regarding advertising. This is further exacerbated when considering that it is Adam Stewart's own testimony that both Sandals and SRI 2000 are responsible for what he calls "brand standards" which included contact and collaboration with Plaintiff. *Id.*, 66:24-25, Ex. 9 (explaining his role in a direct email communication with Plaintiff regarding creation of a web logo Adam Stewart states, "SRI 2000 is responsible for all things Sandals related, including brand standards"); *see also* 79:4-19 Ex. 18(c); *Bf* 97:14-16 ("SRI operations (Ltd.) manages brand standards…");105:1-8 ("SRI Jamaica is responsible for brand standards"); 30:3-9 ("My role was to do with the operations at the SRI, Ltd., Jamaica level. And from time to time my father would ask me to assist in transferring details of the hotel operations, brand standards, et cetera, through Unique Vacations and on to Hunter Hammersmith in a collaborative effort for them to produce advertising materials."); 102:20-25, 103:1-5, Ex. 20 (discussing email invitation to a "collaboration" that included Shawn DaCosta, chief operations officer of Sandals, Ltd, the head of IT, Stuart de la Penha for Sandals, and himself regarding a meeting in Miami with Plaintiff for a new marketing campaign).

Valentin Flores, a former chief information officer, for what Flores described as "all the companies" in the Sandals umbrella, testified that he was responsible for building and maintaining the website and recognizes that the images displayed on the website "was what sold the product." *Id*. Flores testified that he and another website manager were required to adjust the website according to how the Sandals' Founder requested. *Id*. The Court even noted that, "[a]ccording to Flores, SRI 2000 and Defendant shared information technology infrastructure (*see* Flores Dep. 102:2–15; 122:19–123:3); and Stewart's father, during his leadership of Sandals, 'decided

everything' and would discuss 'multiple things, multiple issues, multiple decisions affecting Sandals as a group' (*id.* 69:17–70:3)." [ECF No. 158] at 9 (citing Not. 3, 6; Flores Dep. 45:8–19).

> *Rainer's Decl. ¶ 9:* "SRI Limited has never solicited business in the United States or Florida and does not directly advertise, market, or sell to the public any vacation property in the United States or Florida through print, radio, television, the internet, or through booking or travel agents. SRI Limited also does not specifically target Florida or any other state with any SRI Limited brand advertising or marketing."

Flores' testimony demonstrates that not only did Sandals receive its income from the Sandals website, but also that Sandals' Founder controlled the website's content that "sold the product." Flores Dep. 49:4-23. Moreover, Flores testified that the website "display[s] availability and rates for all of the hotels. It's able to display airline flights to those hotels. It's able to take payments for -- you know, for purchasing that particular, you know, room or hotel, plus flights, and eventually it creates a booking." *Id.* 14:5-18. It is well-established that this use of the website to infringer, as alleged, is sufficient evidence to establish personal jurisdiction. *See Louis Vuitton*, 736 F.3d at 1354; *Licciardello*, 544 F.3d at 1283; *Foreign*, 2008 WL 4724495 at *6.

Brian Ludwick, who worked for Plaintiff for 14 years, interacted with Gordon Stewart on a regular basis beginning in 2010, before SRI 2000 was purportedly "redomesticated." Ludwick's entire job involved where and how the content that Plaintiff created for Sandals would be communicated to the public. Ludwick frequently met with Gordon Stewart in his dedicated office in Miami, which Ludwick describes in great detail. The level of knowledge Ludwick acquired over his 14 years working with Sandals and Gordon Stewart should not be discredited. The work described in his declaration represents a significant understanding of Sandals' business, marketing, target markets, and the goal of driving traffic to the sandal.com website. See, [ECF 132-2].

> *Rainer's Decl. ¶ 10:* "SRI Limited does not earn any revenue directly off any individuals or entities in the United States or Florida."

Flores further confirmed that Sandals receives revenue from the website. *Id*. ("And it sends that booking to the internal systems for Sandals or Unique Vacations and basically funnels the money into the bank accounts and it's a booking engine."); 20:4-25 (Flores stated that "from the conversations that we had with accounting is that those funds were funneled somewhere else, you know, part of it being the resorts."). Rainer even contradicts his declaration on this point by stating "SRI 2000 owns the trademarks associated with the Sandals brand and is responsible for marketing and advertising the Sandals resorts business." [ECF No. 124-2] ¶ 15. This statement admits that any marketing and advertising SRI 2000 allegedly engages in, is for the benefit of Sandals.

*Southern Bell* and *Foreign Imported Productions* do not require that Sandals had ultimate or sole authority over the infringing website only that Sandals had a financial interest in the infringing activity and the right to supervise those infringing activities. As previously stated, Plaintiff appropriately plead that, regardless of actual ownership over the website, Sandals managed and/or controlled the website displaying the allegedly infringing content. Plaintiff presented sufficient evidence which, construed in light most favorable to Plaintiff, shows that Sandals' Founder, in his capacity as an executive of Sandals, controlled and managed the website. *See generally*, Flores Dep. 83:8-11 (Gebhard Rainer as Sandals', chief executive officer gave Flores the position as CIO); 64:9-25, 65:1-9 21:6-25 (discussing his immediate supervisors being Rainer, Adam Stewart, and Clarke); 27:12-24 ("So you have the hotel side and then you have the executive side. If their IT guys weren't able to solve it, they would escalate it to us."); 49:4-23 ("…me being responsible for, you know, building the website, maintaining the website, building the booking engine and these images was what sold the product. You know, he [Gordon Stewart] would pick them [images and videos]. They [Sandals' executives] would come down and we

would have to go and put them up and adjust the websites and the online booking engine accordingly.").

## CONCLUSION

Based on the foregoing, Plaintiff, HH ADVERTISING, INC., respectfully requests that the Court enter an order (1) granting its Motion for Reconsideration; (2) vacating its Amended Order [ECF No. 158]; and (3) denying Sandals' Renewed Motion to Dismiss [Amended Complaint].

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

I HEREBY CERTIFY that, pursuant to S.D. Fla. L.R. 7.1(a)(3), the undersigned counsel conferred with Sandals' counsel, Dayron Silverio, with respect to the relief sought in this Motion for Reconsideration on May 8, 2024 and Sandal's counsel does not agree to the relief requested herein.

Respectfully submitted,

**KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.**
*Counsel for Plaintiff, HH ADVERTISING, INC.*
Citigroup Center, 27th Floor
201 S. Biscayne Blvd.
Miami, Florida 33131
Tel.: (305) 379-9000

By: */s/ Terri Ellen Tuchman Meyers*
**Alan J. Kluger**
Florida Bar No. 200379
akluger@klugerkaplan.com
**Terri Ellen Tuchman Meyers**
Florida Bar No. 881279
tmeyers@klugerkaplan.com
**Michael T. Landen**
Florida Bar No. 161144
mlanden@klugerkaplan.com
**Gabrielle C. Craft**
Florida Bar No. 1021048

gcraft@klugerkaplan.com
**Danella C. Williams**
Florida Bar No.: 1002672
dwilliams@klugerkaplan.com
*Counsel for Plaintiff HH Advertising, Inc.*