# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| HH ADVERTISING, INC., <br><br> *Plaintiff*, <br> v. <br><br> UNIQUE VACATIONS, INC.; *et. al.*, <br><br> *Defendants*. | Case No. 23-24073-CIV-ALTONAGA/Reid |

### SRI LIMITED'S OPPOSITION TO MOTION FOR RECONSIDERATION OF ORDER DENYING JURISDICTIONAL DISCOVERY

Once again in this litigation, Plaintiff asks the Court for a redo. This time, Plaintiff blames the Court for its failure to support its request for a second round of jurisdictional discovery as to SRI Limited. In an attempt to remedy that failure, the present Motion seeks reconsideration of the Court's Order denying jurisdictional discovery and identifies four topics on which Plaintiff claims to have a "qualified right" to further jurisdictional discovery. None of the bases advanced in the Motion warrant the extraordinary remedy of reconsideration, nor a second round of such discovery.

As a preliminary matter, Plaintiff urges this Court to apply the wrong standard. Plaintiff does not have a "qualified right" to the additional 2.5 months of discovery it has requested in its proposed scheduling order [ECF No. 187-1]. Under limited circumstances, a party has a qualified right against the *complete* denial of jurisdictional discovery. That is not our case. This Court previously afforded Plaintiff three months to conduct wide-ranging jurisdictional discovery and there is no right—qualified or otherwise—for more.

Applying the correct standard, this Court should deny the Motion because it does not demonstrate a need for specific jurisdictional discovery that was unavailable the first time around. Each topic identified in the Motion was either previously pursued by Plaintiff in some form, available for inquiry but not pursued, or otherwise could have and should have been investigated prior to the most recent amendment. That is fatal to the Motion.

### BACKGROUND

On July 2, Plaintiff unilaterally filed a Notice on Jurisdictional Discovery [ECF No. 183] indicating, without any justification, that it sought further jurisdictional discovery. Along with the Notice, Plaintiff submitted a proposed schedule [ECF No. 183-1]. The proposal provided 2.5

1

months for jurisdictional discovery and set the first deadline within a few days. *Id.* ¶ 2. The next day, the Court issued its Order denying further discovery, observing that Plaintiff's Notice did "not include any rationale for proceeding with jurisdictional discovery." ECF No. 186 at 1.

Plaintiff now blames the Court for its failure to provide "any rationale" and to identify the specific discovery it needs. This blame shifting is perplexing. Plaintiff was on notice that it bore the burden of showing the Court the need for additional jurisdictional discovery both because SRI Limited specifically explained that burden to Plaintiff during the parties' meet-and-confer session on the joint Notice and because that burden is prescribed by precedent in this District and in this Circuit. As SRI Limited repeatedly argued to no avail, if the whole point of the court-ordered meet-and-confer session was to discuss *whether* Plaintiff should be allowed further jurisdictional discovery, that discussion necessarily entailed meaningful discourse regarding the need, nature, and parameters (*e.g.*, time and scope) of any discovery sought by Plaintiff, as well as an explanation as to why newly proposed discovery was not sought during the first three-month period. Those details were crucial not only to answer the question of whether further discovery was permissible, but also so that the parties could meaningfully confer on a proposed schedule.

And yet, Plaintiff maintained it was not prepared to discuss specifics and that it was not required to do so for purposes of the joint Notice. According to Plaintiff, last time the Court authorized jurisdictional discovery, the Court ordered the parties to confer on a discovery schedule, the parties did so and proposed a schedule, and a discovery period followed as a matter of course. Of course, that logic overlooks a critical difference: the first time around, Plaintiff had *not yet* had *any* opportunity to pursue jurisdictional discovery; but Plaintiff has since been afforded three months of expansive jurisdictional discovery as to SRI Limited.

In the end, despite SRI Limited's insistence that the joint Notice include brief-but-substantive position statements regarding entitlement to jurisdictional discovery, Plaintiff elected to read the Court's Order Granting Leave to File the Second Amended Complaint [ECF No. 175] as if it was a foregone conclusion that Plaintiff was entitled to additional jurisdictional discovery. Plaintiff's decision can be viewed in one of two ways, neither of which merits reconsideration of the Court's Order [ECF No. 186]. The first is that Plaintiff genuinely misunderstood both the law and this Court's Order Granting Leave [ECF No. 175]. A mistake of law, even an honest one, should not excuse a party's failure to satisfy a legal burden nor to neglect to raise arguments that it could have made in the first instance, especially when the party was alerted to the mistake

beforehand. The second is that Plaintiff made a tactical play. A pro forma approach to the threshold question of whether Plaintiff is entitled to jurisdictional discovery benefits *only* Plaintiff, because it allows Plaintiff to bypass its initial showing. Once jurisdictional discovery is ordered, SRI Limited's remaining bulwark against overreach is protracted litigation before the magistrate judge. But because a defendant possesses a "legitimate and protectable interest in avoiding the time, effort, and expense of discovery when the court's jurisdiction to hear the merits may be lacking," *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 n.7 (11th Cir. 1982), Plaintiff should not escape the threshold burden of demonstrating the need for specific discovery and explaining why it was previously unable to pursue that discovery. Plaintiff cannot meet that burden here.

## ARGUMENT

**I.     There is no qualified right to further jurisdictional discovery.**

As a preliminary matter, the Motion incorrectly states Circuit precedent by claiming that Plaintiff has a "qualified right" to an additional 2.5 months of jurisdictional discovery that can be denied only if the party unduly delays in propounding discovery or seeking leave to initiate discovery. *See* Mot. at 2, 7 ("The only reason for a court to deny jurisdictional discovery is based on undue delay, which is not the case here.").

That is not the law. The qualified right precedent cited applies (1) when merits facts and jurisdictional facts are (a) intertwined and (b) genuinely in dispute, and (2) when a court "completely denies" a party "any opportunity" to take jurisdictional discovery. *Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017). Thus, in *City of Sarasota*, where the district court never afforded the plaintiff any opportunity to pursue jurisdictional discovery of its own, the Eleventh Circuit found error because the plaintiff had been "***completely denied*** . . . ***any opportunity*** to inquire into [facts that] implicate[d] both the merits of the ACLU's claim and the court's jurisdiction . . . ." *Id.* (emphasis added). Likewise, in the *Eaton* decision that first discussed the "qualified right," the district court erred because it "dismissed [the] complaint ***before*** plaintiffs had been able to complete ***any discovery at all***." *Eaton*, 692 F.2d at 730 (emphasis added). So *Eaton*, as reaffirmed in *City of Sarasota*, conferred a qualified right only when jurisdictional discovery has been completely denied. And even then, the district court would still not err in dismissing a complaint without any jurisdictional discovery if the plaintiff lacked diligence or "failed to specify what they thought could or should be discovered." *Posner v. Essex*

3

*Ins. Co.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999) (affirming district court's dismissal of case without jurisdictional discovery).

The Court has not erred here in any respect. Unlike in *City of Sarasota*, *Posner*, and *Eaton*, Plaintiff was given an opportunity to conduct lengthy, wide-ranging discovery into general and specific personal jurisdiction over SRI Limited, including the topics identified in the Motion, such as the relationship between SRI Limited, SRI 2000, and UVI and UTC. *See, e.g.*, ECF No. 86 at 3–4 (advancing agency theory of personal jurisdiction and seeking Adam Stewart's deposition on the basis that he has "relevant information regarding the control, management, and relationship Sandals maintained with Sandals, UTC, and UVI"); ECF No. 67 at 5 (moving to compel documents from SRI Limited that are "relevant to prove Sandals contacts with Florida that go beyond the advertising at issue to establish general jurisdiction"); Pl.'s Jurisdictional Requests for Production ("RFP") Nos. 34, 35, 36, 37.

The correct, applicable standard does not break in Plaintiff's favor, much less confer any sort of right to jurisdictional discovery *beyond* the three months already provided. When pertinent jurisdictional facts are genuinely in dispute, a party is entitled to "limited jurisdictional discovery on those genuinely-disputed facts." *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2020 WL 6907056, at *3 (S.D. Fla. Nov. 24, 2020). But that limited entitlement must be weighed against a defendant's "legitimate and protectable interest in avoiding the time, effort, and expense of discovery when the court's jurisdiction to hear the merits may be lacking." *Eaton*, 692 F.2d at 729 n.7. The balance courts in this District have struck is that, even if a plaintiff "provide[s] the Court with some showing establishing the need for jurisdictional discovery," *Anderson v. Ahluwalia*, 587 F. Supp. 3d 1179, 1194 (S.D. Fla. 2022), *aff'd in part, vacated in part, remanded*, No. 22-10961, 2022 WL 3156409 (11th Cir. Aug. 8, 2022); and even if a plaintiff sufficiently "specif[ies] what they thought could or should be discovered," *Posner*, 178 F.3d at 1214 n.7; a plaintiff is nonetheless "not entitled to jurisdictional discovery solely to remedy a lack of jurisdictional facts or an insufficient pre-filing investigation," *Zantac*, 2020 WL 6907056, at *3. A plaintiff is also "foreclosed from pursuing jurisdictional discovery in an attempt to marshal facts that he '***should have had***—but did not—before coming through the courthouse doors.'" *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1339 (S.D. Fla. 2016) (emphasis added) (quoting *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007)).

Accordingly, even setting aside the onerous reconsideration framework that should apply here, under a *de novo* review Plaintiff must still demonstrate a need for specific jurisdictional discovery that was previously unavailable because jurisdictional discovery should not serve as a basis for Plaintiff to attempt to marshal facts that he should have had before the Second Amended Complaint was filed. The Motion does not satisfy that standard.

## II.     Reconsideration is not warranted.

The Motion does not and cannot show that the four topics of discovery identified were unavailable during the first round of discovery. Each topic identified in the Motion was either previously pursued by Plaintiff in some form, available for inquiry but not pursued, or otherwise could have and should have been investigated prior to the most recent amendment. Furthermore, the new claims do not implicate new jurisdictional facts that were previously unavailable.

### A.     Plaintiff had an opportunity to explore the topics identified.

The Motion identifies four topics of inquiry that supposedly relate to the "new jurisdictional allegations" in the SAC. Mot. at 6. But those topics also related to the *prior* jurisdictional allegations, and Plaintiff already had three months to explore them.

For instance, Plaintiff previously explored the "[c]orporate relationship between SRI Limited, SRI 2000, and the Unique Defendants relating to the Sandals website and the Wedding Program." Mot. at 7. In its Interrogatories to SRI Limited, Plaintiff asked about "the relationship between [SRI Limited] and [SRI 2000], including as it relates to advertising and marketing services," Interrogatory No. 3; "the relationship between [SRI 2000] and each of the Co-Defendants, including as it relates to advertising and marketing services," *id.* No. 5; SRI 2000's "employees," *id.* No. 7; "every type of action by Co-defendants or [SRI 2000] that requires [SRI Limited's] approval or authorization, including a actions relating to payments or expenses, capital or operating expenditures, entry into contracts or involvement in other business transactions," *id.* No. 12; all agreements between SRI Limited and SRI 2000, *id.* No. 19; and "the relationships" between all Sandals entities, "including the entity that operates and/or owns the www.Sandals.com website," *id.* No. 27.

Plaintiff also requested the production of all contracts and agreements between SRI Limited, SRI 2000, and UVI/UTC related to advertising and marketing, RFP No. 9; documents reflecting "any agency relationship" between SRI Limited and any entity in Florida, RFP No. 15; any organizational chart showing the relationship between SRI Limited and any Sandals-related

5

entity, including specifically "the entity that operates and/or owns the www.Sandals.com website," RFP No. 29; documents related to SRI 2000's incorporation and owners or shareholders, RFP No. 34; SRI 2000's organizational chart, RFP No. 35; "documents showing the nature of the relationship between [SRI Limited and SRI 2000]," RFP No. 36; and documents showing "all *payments* exchanged" between SRI Limited and SRI 2000 relating to marketing and advertising services, RFP No. 37 (emphasis added).

In addition, Plaintiff pursued deposition testimony on the corporate relationship between SRI Limited, SRI 2000, and UVI/UTC. Indeed, Plaintiff *overcame* Adam Stewart's apex doctrine protections in part by arguing to the magistrate judge that Plaintiff was entitled to explore SRI Limited's agency relationships with Florida-based entities and activities, and that Mr. Stewart possessed "relevant information regarding the control, management, and relationship Sandals maintained with Sandals, UTC, and UVI." ECF No. 86 at 3-4. Plaintiff then proceeded to ask Mr. Stewart about SRI Limited's corporate relationship with UVI/UTC and SRI 2000. *See* A. Stewart Dep. Tr. at 21-31 (Mar. 3, 2024) (asking Mr. Stewart about relationship between SRI 2000 and UVI/UTC and SRI Limited). Plaintiff also had the opportunity to make those inquiries of SRI Limited CEO Gebhard Rainer, whose deposition Plaintiff canceled the day before it was scheduled.

Plaintiff even had the opportunity to make those inquiries of UVI/UTC and of former employees of UVI/UTC. Plaintiff scheduled, and canceled at the last minute, the depositions of Andy Blanco, COO of UVI and board member of UTC, and Jeff Clarke, CEO of UVI and board member of UTC. Plaintiff repeatedly forewent opportunities to take depositions on the basis that Plaintiff didn't need them to establish personal jurisdiction over SRI Limited. For example, Plaintiff explained that, "[h]aving now completed Adam Stewart and Valentin Flores' depositions, we no longer need to take the deposition of Andrew Blanco (or Jeffrey Clarke) to establish personal jurisdiction." Email from Terri Meyers to Matthew Walch, et al. (Mar. 5, 2024; 5:43 PM). Similarly, during a hearing before the magistrate judge regarding Plaintiff's request to depose Michael LaManna, Plaintiff *withdrew* its request to depose him, representing to the Court, "I don't need him. No, I don't." Hearing Tr. at 92:17-:25 (Feb. 15, 2024). Given Plaintiff's decision to abandon those depositions last time, it was a surprise to see two of those names—Mr. Clarke and

6

Mr. LaManna—resurface in the list of nine[1] deponents Plaintiff initially provided for this second round of jurisdictional discovery.

The so-called Wedding Program is not a new area of inquiry. During the first bout of jurisdictional discovery, Plaintiff generally sought documents related to "facilities, products, and services" provided by SRI Limited to Florida-based customers, RFP No. 23; as well as all business activities "engaged in or conducted by [SRI Limited] directly or indirectly from Co-defendants in Florida," RFP No. 17; and it specifically requested information on SRI Limited's "**wedding packages**," RFP No. 24 (emphasis added). In any event, Plaintiff has not explained why it should be entitled to take jurisdictional discovery on a program that *it knew about before* filing its initial complaint. The Motion states that "Plaintiff created and worked on [the Wedding Program] directly with SRI Limited." ECF No. 187. If that is true, then Plaintiff should not be permitted a second chance to take the discovery that it "should have had—but did not—before coming through the courthouse doors," or even more generously in this case, that it could have explored during the first round of discovery. *Thompson*, 174 F. Supp. 3d at 1339.

Plaintiff's other topics fare no better. Plaintiff says it needs more discovery to obtain communications between SRI 2000 and the other Defendants regarding marketing and advertising. Mot. at 7. But to the extent SRI Limited was in possession of such documents, they were *already produced*. *See* ECF No. 72 at 2-3 (sustaining SRI Limited's objection to producing documents not in its control "with the caveat that Sandals must produce documents and information that are within its possession, custody, or control even if those are documents and information originated or derived from its parent entity(ies)"). On this point, the Motion contains a misstatement. Plaintiff claims it attempted to obtain documents from SRI 2000 but was unable to do because "SRI refused to provide any evidence on the basis that SRI 2000 was not a party to the case and does not have control or have unfettered rights to obtain documents and materials from SRI 2000." Mot. at 6 n.6. SRI 2000's status as a *party* to the litigation was irrelevant. Plaintiff served a request for production *on SRI Limited*, not SRI 2000, and SRI Limited properly objected to the production of documents outside its control. The magistrate judge sustained SRI Limited's objection. ECF No. 72 at 2-3. Nothing has changed. SRI Limited still lacks control over SRI 2000's documents.

---

[1] Plaintiff sought seven depositions in the first round, several of which Plaintiff canceled after they were scheduled, and at least one (of Mr. LaManna) that Plaintiff abandoned after the parties spent extensive time briefing a motion to quash that deposition.

SRI 2000's new status as a party does not justify additional discovery *on* SRI Limited. And since SRI 2000 is not challenging personal jurisdiction, it should not be subject to jurisdictional discovery. Moreover, Plaintiff could have pursued discovery against SRI 2000 the first time around by issuing a subpoena. After all, Plaintiff was able to secure non-party discovery from Valentin Flores. Plaintiff elected not to pursue discovery from SRI 2000 for reasons the Motion does not explain. Plaintiff's failures do not warrant further jurisdictional discovery.

B. **Plaintiff's new infringement claims do not implicate new jurisdictional facts.**

Plaintiff claims further discovery is appropriate because it "has not had an opportunity to conduct jurisdictional discovery on the New Claims, which by the very nature of an indirect claim, involve intermediaries who supervise, control, and/or benefit from the acts of other parties." Mot. at 4-5. According to Plaintiff, "these new indirect copyright claims place the relationship between the parties . . . directly at issue," whereas the "relationship between SRI Limited and SRI 2000 was not at issue in the original Complaint[.]" *Id.* at 5.

The notion that Plaintiff's new infringement claims warrant 2.5 more months of jurisdictional discovery because they purportedly focus, for the first time, on questions of control and the relationship between the parties cannot be squared with Plaintiff's prior discovery requests, which concerned *those very same* issues, and with Plaintiff's prior attempt to assert personal jurisdiction over SRI Limited via an agency theory. A major theme of Plaintiff's previous jurisdictional discovery efforts was that SRI Limited, SRI 2000, and UVI/UTC were one and the same, or at minimum each other's agents. To give but one example: At the hearing on SRI Limited's Motion for Protective Order Regarding Deposition of Adam Stewart, *see* ECF No. 95 (denying motion), Plaintiff responded to Defendants' contention that Plaintiff should depose *other* individuals instead of Mr. Stewart by arguing that the other individuals proposed were not the decisionmakers. When the Court asked, "What are you going to say when they later argue that Limited is not the right entity and just that there is no corporate formalities?" Plaintiff responded,

> No corporate formality. They treat it like their candy store was one and the same. And I will be able to show that there is no corporate difference that we [Plaintiff] dealt with Sandals, Sandals, Sandals, but I haven't developed that because I am not there now. I am trying to get them [SRI Limited] the before the Court.

Hearing Tr. at 65:13-:18 (Feb. 15, 2024). Then, Plaintiff devoted the final portion of its oral argument to trying to rebut a point SRI Limited had made earlier in the hearing—that there was "no agency affiliate relationship between SRI [Limited] and SRI 2000." *Id.* at 67:25-68:01. Simply

8

put, in light of the paper discovery propounded and the arguments that Plaintiff repeatedly made to the Court, it strains credulity to maintain that the relationship between SRI Limited and SRI 2000 was not at issue last time. Plaintiff had ample opportunity to inquire into the relationship between SRI Limited, UVI/UTC, and SRI 2000 and in fact *did* inquire. *See, e.g.*, A. Stewart Dep. Tr. at 21-31 (Mar. 3, 2024).

That the new claims have slightly different elements does not matter. For starters, the new infringement claims and the initial ownership claim share one fundamental question: Who owns the copyright to the works at issue? *See* 17 U.S.C. § 504 (providing "copyright owner" cause of action for infringement). The SAC does not allege *new* works, so despite the new theories of liability, it stems from the same factual premise. More importantly, this is *not* merits discovery. The question for purposes of specific personal jurisdiction is whether SRI Limited's claims "arise out of or relate to at least one of the ***defendant's contacts with the forum state***," and whether SRI Limited "***purposely availed*** [itself] of the privilege of conducting activities ***within the forum state***." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (emphasis added) (cleaned up). In other words, new claims or not, Plaintiff must establish SRI Limited's *contacts with* Florida. That was the same goalpost last time, when Plaintiff attempted to substantiate its allegations with discovery on SRI Limited's relationship with SRI 2000, *see* Interrogatory No. 3; on SRI Limited's relationship with "each of the Co-Defendants" (who had not contested jurisdiction), *id.* No. 4; and on any "agency relationship between [SRI Limited] and ***any entit(ies), including Co-defendants, located in Florida***," RFP No. 15 (emphasis added). That's precisely what Plaintiff intends to attempt to do again, and what it must do to have any chance of establishing minimum contacts between SRI Limited, a foreign company, and Florida. There is no need for a do-over.

## **CONCLUSION**

After nearly a year, Plaintiff finally decided to add the correct party (other than UVI and UTC) with an interest in this litigation, SRI 2000. It is unclear why Plaintiff continues to pursue SRI Limited, a company with no role in marketing or advertising. But Plaintiff's misguided reasons for doing so do not justify another round of jurisdictional discovery. The Motion does not identify new jurisdictional facts that Plaintiff was unable to explore the first time around. And so this Court need not reconsider its decision rejecting Plaintiff's request for a second bite at the apple with 2.5 months of additional jurisdictional discovery. To the contrary, it is time to get to the merits

9

of the claims at issue and specifically whether UVI, UTC, and SRI 2000 have copyright ownership or, in the alternative, an implied license to continue to use the copyrighted works that UTC and its predecessor paid HH tens of millions of dollars to develop in conjunction with them over the years.

**PODHURST ORSECK, P.A.**

By: */s/ Dayron Silverio*
Peter Prieto (FBN 501492)
Matthew P. Weinshall (FBN 84783)
Dayron Silverio (FBN 112174)
One S.E. 3rd Avenue, Suite 2300
Miami, FL 33131
T. 305.358.2800
pprieto@podhurst.com
mweinshall@podhurst.com
dsilverio@podhurst.com

**LATHAM & WATKINS LLP**

Matthew W. Walch (*pro hac vice*)
matthew.walch@lw.com
330 North Wabash Avenue, Suite 1000
Chicago, IL 60611
Telephone: (312) 876-7700

Jessica Saba (*pro hac vice*)
Jessica.Saba@lw.com
555 11th St. NW, Suite 1000,
Washington, DC 20004
Telephone: (202) 637-2200

***Counsel for Defendant Sandals Resorts International Limited***